

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

January 5, 1962

Honorable Jesse James
State Treasurer
Treasury Department
Austin, Texas

Opinion No. WW-1233

Re: Whether a "book credit" in
a cooperative association
is "personal property" with-
in the meaning of Article
3272a, V.C.S.

Dear Mr. James:

This refers to your letter of November, 1961, from
which we quote as follows:

"...On January 1, 1955, a cooperative association
apportions equity to a patron in a form of a
"book credit". In compliance with U. S. Treasury
Department regulations, the cooperative associ-
ation attempts to notify the patron (for example,
by United States mail) of the apportionment on
the books of the cooperative the dollar amount of
assets for the account of the patron. The January
1, 1955 notification is undeliverable and the
whereabouts of the patron unknown as of that date.

"The question is whether or not the "book credit"
equity becomes subject to escheat seven (7) years
following January 1, 1955, even though the cooper-
ative has never made available funds to redeem or
retire the "book credit equity".

We refer also the letter to you from the General Counsel
for the Farm Credit Banks of Houston, which letter was made a
part of your request:

"The great majority of the cooperatives in this
State have followed the practice of issuing
common and preferred stock on the basis of a
par value of $1.00 per share. They have also
incorporated in their charters and by-laws pro-
visions which permit the retirement of capital
on what is commonly referred to as the "revolving
plan". Under this plan the cooperative may, from
time to time, call in for retirement at par plus

any dividends unpaid thereon, such of its out-
standing capital stock as is in financial
position to retire, but in so doing must re-
tire such stock in the date order in which it
was issued.  In other words, the oldest out-
standing shares must first be retired before
later shares can be called for redemption.

"Farmers cooperative associations organized under
the Texas Cooperative Marketing Act are non-
profit in nature and are designed to render
services to their members and patrons at cost.
It is the universal practice, however, for these
organizations to charge for their services the
usual and customary charges prevailing in the
area and at the end of each fiscal year refund
to the patrons any overcharge to which they have
been subjected as a result of paying the going
charges for the services rendered.  These refunds
are commonly called "patronage refunds" or "pa-
tronage dividends" and are made to the patrons on
the basis of the amount of business done with or
for them by their cooperative; hence the man who
may have paid $500.00 to the cooperative for gin-
ning his cotton would receive in patronage refunds
five times as much as the man who may have paid
only $100.00 for having his cotton ginned by his
cooperative.

"The obligation to make these patronage refunds
is a contractual one set forth in the Articles
of Incorporation and/or laws of the association.
The by-laws also carry a reciprocal obligation
on the part of the patron to see that his cooper-
ative organization is adequately capitalized.
This contractual agreement obligates refunds which
he receives.  It is based upon the premise that
the patrons who are making use of the services and
facilities of the cooperative organization are the
ones who should have their investment in it.

"When the amount of needed capital is sufficient
and the cooperative is in the position to make a
cash distribution, it does so by retiring its
oldest outstanding stock on the revolving plan
above-mentioned.  However, some cooperatives
follow the plan of making their annual distributions
partly in cash based upon current patronage and

partly to retire the oldest outstanding stock. This determination varies from year to year and is governed by a number of different factors.

"When a patronage refund is made by a capital stock cooperative operating under the revolving capital plan, the amount which is not distributed in cash is distributed in the form of allocations of capital stock. Thus if a patron is entitled to a patronage refund of $100.00 at the end of the year (assuming that the entire refund is made in the form of stock) he will be given credit upon the books of the cooperative as having purchased its preferred stock in the amount of $100.00 at par. When making this allocation and credit, some cooperative organizations follow the practice of issuing and delivering to the recipient a stock certificate representing the shares of stock so issued. Other cooperatives do not follow the practice of actually issuing certificates of stock but in lieu thereof give notice to the patron of the amount of stock which has been posted upon the books of the organization for his account".

Article 3272a, V.C.S., after requiring the reporting of personal property subject to escheat, provides in Section 1 (b) as follows:

"The term 'personal property' includes, but is not limited to money, stocks, bonds and other securities, bills of exchange, claims for money or indebtedness and other written evidences of indebtedness, dividends, deposits, accrued interest, purchase payments, sums payable on certified checks, certificates of membership in a corporation or association, amounts due and payable under the terms of any insurance policy, security deposits, unclaimed refunds and deposits for utility or other services, funds to redeem stocks and bonds, undistributed profits, dividends, or other interests, production and proceeds from oil, gas and other mineral estates, and all other personal property and increments thereto, whether tangible or intangible, and whether held within this State, or without the State for a person or beneficiary whose last known residence was in this State". (Emphasis Supplied).

If the "book entry" represents a certain amount of stock that has been purchased by the patron (and we are told

that it does) there can be no doubt that the property represented by the "book credit" is "personal property" within the meaning of the statute. The statutory definition of "personal property" expressly includes "stocks". Cooperatives operating under the Texas Cooperative Marketing Act are authorized to sell and issue to their members and stockholders shares of capital stock in such manner and upon such terms and conditions as are provided in their bylaws. Article 5744, V.C.S. We assume that the bylaws of the subject cooperatives authorize the sale and issuance of capital stock in the aforesaid manner.

The objection that there is no fund yet established with which to retire the shares of stock purchased with patronage refunds goes only to the value of the stock and not to its identity as stock, and as personal property. We find nothing in logic or legal precedent which would make the availability of funds to retire stock a prerequisite to the classification of such stock as personal property. More important, Article 3272a neither expressly, nor by implication, makes such a requirement in its definition of "personal property". To the contrary, the statutory definition itself discloses that the legislature regarded "stocks" and "funds to redeem stocks and bonds" as two separate and distinct forms of personal property. See Section 1(b) of Article 3272a quoted above.

Further, the fact that no stock certificate is issued or delivered to the patron does not destroy the status of the patron's allocation, evidenced by a "book entry", as stock or as personal property. A stock certificate and the shares which it represents are two different forms of personal property and ownership of the shares may exist without the possession of any certificate. 10-B Tex.Jur. 2, 3, Corporations, Sec. 168.

The statute requires "every person holding personal property subject to escheat" to report such property to the State Treasurer (Emphasis Supplied). It is our opinion that the cooperative is a "holder" within the meaning of Article 3272a. The term "person" is defined, in part, as "any... business association...of other legal, commercial, governmental or political entity". Article 3272a, V.C.S., sec. 1(a). Palpably, cooperative associations formed under Articles 5737-5764, V.C.S., are "business associations". It has been held that shares of corporate stock are personal property in the nature of choses in action and the situs of the stock may be at the domicile of the corporation and at the same time may be at the place of residence of the owner when he is in possession of a certificate evidencing such ownership. Benson v. Greenville National Exchange Bank, 253 S.W.2d 918 (Civ.App. 1952, error ref. n.r.e.). The stock of a cooperative is, in our opinion, analogous to the stock of a corporation in this respect.

It is our further opinion that the seven year period referred to in Article 3272a commences to run on the date the patronage refund is declared. The "indebtedness" came into being when the cooperative declared the patronage refund. It unquestionably retained its character as "indebtedness" when converted into another form of "indebtedness", namely, shares of stock. The absurdity of viewing the period as commencing anew each time "personal property" changes from one form of personal property to another is manifest.

We are aware that often the thing the patron receives from the investment of his patronage refunds in the cooperative is not referred to as stock, and the evidence of such investment is not referred to as a stock certificate. The allocation resulting from the book credit is frequently in the form of revolving fund certificates, retain certificates, certificates of indebtedness, letters of advice, or similar documents. It is our opinion that regardless of what the interest thus acquired by the patron is called, it is "personal property" within the meaning of Article 3272a if it amounts to a "claim for money or indebtedness".

In conclusion, it is our opinion that the fact that written evidence of the book credit allocation of patronage refunds is not deliverable to the patron does not destroy its character as personal property for purposes of Article 3272a. It may be true that this would prevent the cooperative from claiming the book credit allocation as a deductible expense for income tax purposes under the Federal Tax Regulations. However valid that rule may be in connection with income tax liability, it has no application to the question of whether the book credit allocation is "personal property" within the meaning of Article 3272a. Our statute is obviously designed to apply to this very situation where the owner is missing and neither the personal property nor the evidence thereof is deliverable to the owner.

SUMMARY

A cooperative's "book credit" allocation of equity to a patron on the basis of patronage refunds is personal property within the meaning of Article 3272a to the extent that it rep-

resents, under the facts of each particular case, "stocks" or a "claim for money or indebtedness".

Very truly yours,

WILL WILSON
Attorney General of Texas

BY Henry G. Braswell
Henry G. Braswell
Assistant Attorney General

hgb/maj

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman

Marvin Thomas
Vernon Teofan
Bob Shannon
W. O. Shultz

REVIEWED FOR THE ATTORNEY GENERAL
BY:  Houghton Brownlee, Jr.